UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| NANCY RICH, | ) | |
| Plaintiff, | ) | |
| vs. | ) | CV 00-J-1392-NE |
| DECATUR GENERAL HOSPITAL, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ENTERED
MAY 31 2001

## MEMORANDUM OPINION

This cause comes before this court on defendant's motion for summary judgment (doc. 49) and plaintiff's motion for denial of defendant's motion for summary judgment (doc. 54). At issue is whether plaintiff filed her EEOC charge within the allotted time, whether plaintiff has established a race discrimination claim and whether plaintiff has established a retaliation claim.

### Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the

58

moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issues of material fact. *Id.* at 323. The burden then shifts to the non-moving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e).[1] In meeting this burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477

---

[1] The court disagrees with plaintiff's position that "Rich and the [defendant] must agree to all essential elements of this case for summary judgment to be proper." (Plaintiff's "Memorandum of Law in Support of Denial of Summary Judgment", p. 16).

2

U.S. at 249. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

On motions for summary judgment, the court shall construe the evidence and factual inferences arising therefrom in the light most favorable to the non-moving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Holcombe v. Alabama Dry Dock & Shipbuilding*, 1998 WL 758012 (S.D.Ala.); citing *Anderson*, 477 U.S. at 251-252.

**Background**

Plaintiff began working for the defendant in 1969. (Defendant's Ex. H). In 1986, plaintiff was promoted to Director of Utilization Review ("UR"). (Rich depo., p. 29-30). As Director of UR plaintiff compiled schedules, evaluated employees, maintained meeting minutes, attended meetings, assisted UR employees on the unit, reviewed charts, corresponded with insurance companies and communicated with physicians. (Rich depo., p. 34-35). Plaintiff reported to A.D. "Buster" Petty until 1996 when she began reporting to R.C. Huffman, M.D.. (Rich depo., p. 28).

Plaintiff asked David Jones, Human Resources Vice President, to give one of her employees, Phyllis Boulden, the title of assistant. According to plaintiff, Jones agreed to the title change and said the defendant "needed a black in supervision in the UR department." (Rich depo., p. 70). Plaintiff does not know when Boulden's title change occurred nor when Jones made this remark, however plaintiff is sure that it was before Dr. Huffman was promoted to Vice President of Medical Affairs in 1996. (Rich depo., p. 62-63).

In 1996 the defendant was having problems with efficiency and cost. (Huffman depo., p. 10-13, 20, 22-23, 58-60). Huffman decided to restructure the UR and Social Work Services departments to address some of these problems. (Huffman depo., p. 32-33). On June 24, 1997, Huffman met with the plaintiff to discuss the UR department restructuring. (Huffman depo., p. 41; Rich depo., p. 132). Huffman informed the plaintiff that she would start reporting to Dot Evans and Gloria Arthur rather than to him.

(Rich depo., p. 133; Huffman depo., p. 30, 40-41). Later that same day, Huffman met with the entire UR staff to discuss the organizational changes and distribute organizational charts. (Huffman depo., p. 42-45). Huffman informed the plaintiff that her title would likely change from Director to Coordinator. (Huffman depo., p. 45).

On June 30, 1997, Huffman met with plaintiff to discuss her role as "Coordinator of Utilization Review Office-Based". (Rich depo., p. 150; Huffman depo., p. 53). Plaintiff told Huffman she felt she was being demoted. (Rich depo., p. 151). Huffman responded that her pay and benefits were not changing. (Huffman depo., p. 53). Plaintiff did not want to lose her director title and complained to David Jones, Human Resources Vice President, and Robert Smith, President and CEO. (Rich depo., p. 164-165, Ex. 16; Smith depo., p. 18).

On November 6, 1997, Huffman announced that the UR department would have two coordinators. (Huffman depo., p. 94). Rich as "Coordinator of Utilization Review Office-Based" would work with the defendant's business office and focus on pre-certification and verification of coverage. (Huffman depo., p. 62). Huffman placed Rich in this role because she was a "good subject matter expert regarding insurance guidelines and regulations and so forth." (Huffman depo., p. 63). One employee, Diane Kerr, was assigned to work with plaintiff. (Huffman depo., p. 95-96). On November 10, 1997, plaintiff was sent a memo informing her that she could pick up her new "coordinator" badge in personnel. (Rich depo., p. 242-243, Ex. 24,27).

Phyllis Boulden was promoted to "Coordinator of Utilization Review Unit-Based".

(Huffman depo., p. 96; Rich depo., Ex. 23). Boulden supervised a five person staff, she approved her staff's requested time off, she assisted the UR staff, did evaluations, attended director and department head meetings, and held the title of CURP Coordinator. (Boulden depo., p. 11-13). Boulden did not perform these tasks prior to her promotion. (Boulden depo., p. 13).

Plaintiff currently holds the position of Certification Coordinator. Plaintiff's salary and benefits have remained the same from when she was UR Director. (Rich depo., p. 288, 291). Plaintiff's current duties include: opening and separating mail, posting notes in the computer, separating patient bankruptcy correspondence and filing charts. (Rich depo., p. 296).

On November 3, 1999, plaintiff filed her first charge of discrimination with the EEOC. (Rich depo., Ex. 43). On February 2, 2000, plaintiff filed a second charge of discrimination alleging the defendant retaliated against her when it moved her to the patient accounting cost center and by assigning her ministerial tasks. (Rich depo., Ex. 44). Plaintiff filed suit and now claims she is the victim of reverse race discrimination and retaliation (doc. 41).

## ANALYSIS

### Race Discrimination

Defendant argues it is entitled to summary judgment on plaintiff's claim of race discrimination because plaintiff's EEOC charge was untimely. A complaining party must file an EEOC charge within 180 days of the alleged unlawful employment practice. 42

U.S.C. §2000e-5(e). Filing an EEOC charge within the 180 day period is a prerequisite to a Title VII action. *Beavers v. American Cast Iron Pipe Co.,* 975 F.2d 792,796 (11th Cir. 1992). Plaintiff filed her first EEOC charge on November 3, 1999. (Rich depo., Ex. 43). Defendant argues that her demotion occurred in 1997.

Plaintiff offers two theories for avoiding the time bar: continuing violation and equitable tolling. When determining whether an alleged discriminatory action is a continuing violation, the court must distinguish "between the present consequence of a one time violation, which does not extend the limitations period, and the continuation of that violation into the present, which does." *Thigpen v. Bibb County, Georgia, Sheriff's Dep't,* 223 F.3d 1231, 1243 (11th Cir. 2000) *quoting Calloway v. Partners Nat'l Health Plans,* 986 F.2d 446, 448 (11th Cir. 1993). "The proper focus is upon the time of the *discriminatory acts,* not upon the time at which the *consequences* of the acts become most painful . . ." *Carter v. West Publishing Co.,* 225 F.2d 1258, 1263 (11th Cir. 2000) *quoting Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980). The continuing violation doctrine is not a method "to give a second chance to an employee who allowed a legitimate Title VII claim to lapse." *Roberts v. Gasden Memorial Hospital,* 835 F.2d 793, 800 (11th Cir. 1988).

Plaintiff argues that her "timely claims are related in subject matter to her non-timely claims" because the "actions alleged . . . did not become apparent to Rich until a pattern arose." (Plaintiff's "Memorandum of Law in Support of Denial of Summary Judgment", p. 17). Plaintiff has not plead nor proven any such pattern. According to

7

plaintiff, she was the victim of race discrimination when a black, Phyllis Boulden, was promoted to plaintiff's position. The consequence of Boulden's promotion was plaintiff's demotion in stature and responsibilities.

A continuing violation does not exist simply because plaintiff did not realize her demotion until she felt the full impact of her diminished role. "[W]here the employer engaged in a discrete act of discrimination more than 180 days prior to the filing of a charge with the EEOC by the employee, allegations that the discriminatory act continues to adversely affect the employee or that the employer presently refuses to rectify its past violation will not satisfy the [180 day filing requirement]." *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir. 1992). Plaintiff merely points to incidents where her demotion was evidenced as proof of this pattern, without showing how such incidents were independent or related acts of racial discrimination rather than consequences of her demotion. *Carter v. West Publishing Co.*, 225 F.2d 1258, 1265 (11th Cir. 2000) (No continuing violation "[e]ven though the most painful consequence of the discrimination" occurred withing the 180 day period.). Plaintiff has not established a continuing violation.

Title VII's 180 day time requirement is subject to equitable tolling. *Ross v. Bucheye Cellulose Corp.*, 980 F.2d 648, 660 (11th Cir. 1993). "Under equitable tolling, Title VII's statute of limitations period does not start to run until a plaintiff knew or reasonably should have known that she was discriminated against." *Carter v. West Publishing Co.*, 225 F.2d 1258, 1265 (11th Cir. 2000). Plaintiff bears the burden of

proving that equitable tolling is appropriate. *Ross*, 980 F.2d at 661.

Plaintiff argues for equitable tolling because "the reason the acts were not apparent and should not have been apparent to the Plaintiff was due to the fact that the Plaintiff was constantly reminded by hospital supervisors that she was not being demoted" and "any attempt of suspicion on the part of [plaintiff] was thwarted by the various statements and action of the Hospital's supervisory staff." (Plaintiff's "Memorandum of Law in Support of Denial of Summary Judgment", p. 21-22). On November 10, 1997, plaintiff had to know her title had changed to coordinator and that Phyllis Boulden would begin performing many of plaintiff's former duties. (Rich depo., p. 242-243, 281, Ex. 22, 23, 24, 27). Plaintiff testified that she was "officially" demoted in 1998. (Rich depo., p. 281). On August 25, 1998 plaintiff wrote to her supervisor Dot Evans:

> I have been demoted from Director of Utilization Review to Coordinator of Office Based Functions (a demotion that has never been formally announced to me by either you or Dr. Huffman), I have been taken off the floor and prohibited from any interactions with staff or physicians, I have been moved from my office to a high traffic area where I cannot perform as effectively, all of my job duties and responsibilities that I have spent the past fourteen years developing and improving have been taken away and replaced with ministerial acts, and any staff or assistance which was provided to me in the past is currently being denied.

(Rich depo., Ex. 36). The record is clear that plaintiff's "attempts at suspicion" were in fact successful and that she is not entitled to any equitable tolling. At the very latest, plaintiff had knowledge of her demotion on August 25, 1998. Her first EEOC charge, filed in November of 1999 was clearly untimely. 42 U.S.C. §2000e-5(e).

Plaintiff, in addition to filing her race discrimination claim out of time, has failed

9

to prove pretext. A defendant rebuts the presumption of discriminatory intent when it presents a legitimate nondiscriminatory reason for the alleged discriminatory action. *K. Standard, Jr., v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1332 (11th Cir. 1998). Once a legitimate reason is produced, plaintiff bears the burden "of proving the reason to be a pretext for unlawful discrimination. *Denney v. City of Albany,* 247 F.3d 1172, 1183 (11th Cir. 2001). "In other words, [plaintiff] must provide sufficient evidence to allow a reasonable fact finder to conclude that the proffered reasons were not actually the motivation for [her demotion]." *K. Standard, Jr.,* 161 F.3d at 1332. Plaintiff can accomplish this "(1) by showing that the legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all of the evidence, discriminatory reasons more likely motivated the decision than the proffered reasons." *Id.*

Plaintiff has failed to meet this burden. According to defendant, the UR department was restructured to address problems with efficiency, cost, and third party payor changes. (Huffman depo., p. 10-13, 20, 22-23, 58-60). Plaintiff argues this reason is pretext because plaintiff's former supervisor, Buster Petty, had written a review seven years prior to Dr. Huffman's restructuring that indicated plaintiff was adequately handling changes from third party payors. Dr. Huffman testified that plaintiff was named "Coordinator of Utilization Review Office-Based" because she was a "good subject matter expert regarding insurance guidelines and regulations and so forth." (Huffman depo., p. 63). There is simply no evidence that the department restructuring was a result of discriminatory animus or that these problems were somehow false. Plaintiff was

placed in a position where she would deal exclusively in a subject matter for which she had received commendation. The alleged statement attributed to David Jones regarding the defendant "need[ing] a black in supervision in the UR department", does not prove pretext as that statement was made before Dr. Huffman took control over the UR department and was made by a non-decision maker. (Rich depo., p. 61-63; Huffman depo., p. 32, 60; Jones depo., p. 10, 14-15).

Because plaintiff's claims were filed out of time and because plaintiff has failed to provide sufficient evidence of pretext, defendant's motion for summary judgment regarding plaintiff's claims for reverse race discrimination and disparate treatment is due to be granted.

### Retaliation

A prima facie case of retaliation is necessary to maintain a retaliation claim. A prima facie retaliation case consists of four elements: (1) that the plaintiff engages in statutorily protected activity, (2) that the employer was aware of that activity, (3) that the plaintiff experienced an adverse employment action, (4) that the adverse action was causally related to the protected activity. *Maniccia v. Brown*, 171 F.3d 1364, 1369 (11th Cir. 1999). Plaintiff claims she was retaliated against as a result of filing an EEOC charge on November 3, 1999. (Rich depo., Ex. 44).

According to plaintiff, she has suffered two adverse actions as a result of unlawful retaliation. She alleges that she was transferred from the UR department to patient accounting and has been given menial tasks in retaliation for filing her November 3, 1999

11

EEOC charge. Plaintiff argues that her transfer to patient accounting and title change to Certification Coordinator took place after she filed her November 3, 1999 charge. (Plaintiff's "Memorandum of Law in Support of Denial of Summary Judgment", p. 21-22). However plaintiff testified the change occurred on January 20, 1999: "That was . . . when I really knew that there was another change." (Rich depo., p. 293). Plaintiff points to an evaluation from August 16, 1999 which lists her position as "Utilization Review Coordinator" as evidence that the change did not occur until after her filing, however that same review lists her as reporting to "director of admissions and patient accounting". (Rich depo., Ex. 40). Plaintiff testified that she began reporting to a supervisor in patient accounting and that her work changed in 1998. (Rich depo., p. 290). It is clear that plaintiff was not transferred to patient accounting and given another title in January of 1999 as a result of her actions in November of 1999. Plaintiff's title change and transfer to patient accounting is obviously not causally linked to the filing of the EEOC charge.

Plaintiff claims she was assigned menial tasks around January 21, 2001. (Rich depo., p. 319-320, Ex. 44; doc. 1, ¶29). This was while she was under the supervision of Ernest Holley. According to plaintiff, Holley has not committed any discriminatory acts against her. (Rich depo., p. 297). Gary Turner supervised the plaintiff before Holley. He also assigned plaintiff tasks that she felt underutilized her abilities. *Id.*, at 296. Plaintiff testified as to why she felt Turner assigned her these tasks: "I just felt - - I was just put off on him, and he was wanting to get rid of me, too." *Id.,* at 296-297. Again plaintiff has failed to show a causal link between her EEOC filing and an adverse employment action.

Based on the foregoing, the court finds that defendant's motion for summary judgment (doc. 49) is due to be **GRANTED**. Plaintiff's motion for denial of defendant's motion for summary judgment (doc. 54) is due to be **DENIED**. Judgment shall be entered on behalf of the defendant.

**DONE** and **ORDERED** this 31 day of May 2001.

_____
INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE